UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| *REHKEMPER & SONS, INC.,* | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| *MID-RIVERS DEVELOPMENT AND* | ) | |
| *CONSTRUCTION LLC,* | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Rehkemper & Sons, Inc. by and through its undersigned counsel of record and, pursuant to 28 U.S.C. Section 2201 and Fed. R. Civ. P. 57, states the following in support of its Complaint for Declaratory Judgment against Defendant Mid-Rivers Development and Construction, LLC.

## PARTIES, JURISDICTION AND VENUE

1.      Rehkemper & Sons, Inc. ("Rehkemper") is a family-owned subcontractor, organized and existing under the laws of the State of Illinois with its principal place of business located at 17817 St. Rose Street, Breese, IL 62230.

2.      Rehkemper is a citizen of the State of Illinois, specializing in providing, *inter alia*, roof and floor trusses, factory-fabricated stud walls, loose wood products, and connection hardware to construction projects.

3.      Defendant Mid-Rivers Development and Construction LLC ("Mid-Rivers") is a developer organized and existing under the laws of the State of Florida and registered as a foreign entity to do business in the State of Missouri.

14968281.v5

4.      Based on information and belief, Mid-Rivers' sole manager is James N. Gordon who resides in Jacksonville, Florida.

5.      As a result, Mid-Rivers is a citizen of the State of Florida.

6.      This Complaint is submitted in accordance with Rule 57 and the Federal Declaratory Judgment Act, codified at 28 U.S.C. Sections 2001 and 2201, in order to obtain a declaration of the parties' rights and/or obligations under a Contingent Agreement entered into by Rehkemper and Mid-Rivers.

7.      This Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a), because it is a civil action between residents and citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in the United States District Court for the Eastern District of Missouri under 28 U.S.C. § 1391(b)(1)-(2), and Local Rule 2.07(A)(1) and (B)(4), because Mid-Rivers is a foreign entity registered to do business in the State of Missouri and a substantial part of the events giving rise to this action took place within the Eastern District.

## FACTS

9.      In March 2020, Rehkemper and Mid-Rivers began discussing Rehkemper providing certain wood carpentry components and material to Mid-Rivers for use in its work on the "Reserve at Mid-Rivers Apartment" project (the "Project").

10.      On or about March 5, 2020, Rehkemper submitted a 30-day proposal to Midwest Diversified Development, providing an estimate for Rehkemper providing Wood Products to the Project.

11.      Soon thereafter, Mid-Rivers responded by sending Rehkemper a "Non-Binding Letter of Intent and Authorization to Proceed" based upon the Rehkemper proposal.

2

12.     Notwithstanding its representation that the Project would begin in March 2020, Mid-Rivers did not approve project initiation and, rather, postponed negotiations for six months.

13.     In September 2020, Mid-Rivers again approached Rehkemper proposing the parties enter into an agreement to complete all pre-panelized wood framing work on the Project based on Rehkemper's previously submitted proposal.

14.     While Mid-Rivers' proposed agreement referenced a delivery schedule as "Exhibit D," no schedule was attached or transmitted.

15.     After reviewing Mid-Rivers' proposed agreement, Rehkemper made revisions and submitted the revised proposal back to Mid-Rivers for consideration.

16.     Given Rehkemper's ongoing concern with the significant delay it had already experienced in project initiation and steeply rising lumber prices, Rehkemper remained adamant that any agreement be contingent on a "mutually agreeable delivery schedule."

17.     On September 21, 2020, Mid-Rivers approved Rehkemper's revised proposal (the "Contingent Agreement") and specifically initialed three provisions indicating the contractual obligations would be contingent on a "mutually agreeable schedule":

14968281.v5

**WORK COORDINATION AND COOPERATION:** The Subcontractor agrees to cooperate to the fullest extent with Contractor and to coordinate and perform the Work in accordance with the Contractor's job schedules, in such order and priority as Contractor considers necessary to avoid delay or hindrance of the construction of the project as a whole. Subcontractor fully agrees to cooperate with Contractor's other subcontractors on the project and to remove any workmen immediately who are objectionable to the Contractor. Subcontractor additionally agrees to keep thoroughly informed as to the progress of the project, to perform the Work and to expedite it in a continuous, uninterrupted, professional and workmanlike manner. | as mutually agreed with Subcontractor |   ②

EDITS ① THROUGH ⑤ AGREED:    x _MR_    x _____  9/21/20

such part or parts of the Work as Contractor may specify. | as mutually agreed with Subcontractor and |   ④

The Subcontractor acknowledges **THAT TIME IS OF THE ESSENCE FOR THE PERFORMANCE OF THIS AGREEMENT** and the Work, including all Contract Documents. The Subcontractor shall complete the Work as required by the job schedule prepared by the Contractor which may be amended from time to time without affecting Subcontractor's obligation as set forth in this contract. **Failure to maintain the schedule is sufficient cause to ~~withhold payment and~~ terminate the** ⑤ **contract.**

EDITS ① THROUGH ⑤ AGREED:    x _MR_    x _____  9/21/20

**TERMINATION:** All Subcontractor breaches, non-performance or non-compliance shall be deemed both material and substantial entitling Contractor to additionally elect any and all remedies listed below: | mutually agreeable |   ③②
| and Subcontractor |

1.   If Subcontractor delays, hinders, or fail or refuses at any time to proceed in strict accordance with the job schedule, as determined by the Contractor or abandons the project for a period of 48 hours (two calendar days) or becomes the subject of any receivership, bankruptcy, or other proceeding under statutes or regulations affecting its affairs, wherein its affairs are placed under the control of some public authority or court-appointed official, then any such event shall be deemed a material breach of this Subcontract. Thereafter, the Contractor shall have the right to terminate this Agreement.

EDITS ③① THROUGH ④⓪ AGREED:    x _MR_    x _____  9/21/20

4

14968281.v5

*A true and accurate copy of the Contingent Agreement is attached to this Complaint as*

*Exhibit 1 and incorporated by reference as if fully set forth herein.*

18.     Notably, Exhibit D, where Mid-Rivers customarily attached a delivery schedule

with specific commencement and completion dates, was not included with the Contingent

Agreement.

19.     The project schedule was intentionally omitted by Mid-Rivers from the

Contingent Agreement because Mid-Rivers was still not yet ready to proceed and could not

propose delivery schedule for Rehkemper's consideration.

20.     The only deadline set forth in the Contingent Agreement was that Rehkemper's

"work is to be completed no later than March 25, 2022 (the Completion Date)." *See Exhibit 1.*

21.     Thereafter, the parties began to negotiate the delivery schedule contingency,

exchanging proposals for certain commencement dates that attempted to account for the massive

economic impact that project delay had imposed on lumber prices.

22.     Specifically, lumber prices from March 2020 (the date project initiation was

supposed to occur) to February 2021 (the date Mid-Rivers emerged and demanded immediate

delivery) had tripled:

LUMBER AVERAGES PER ATTACHED INFO (PRICE PER THOUSAND)

| MATERIAL | 3/30/2020 | 7/6/2020 | 11/30/2020 | 2/1/2021 |
|---|---|---|---|---|
| 2X4X104 5/8" | 539 | 645 | 905 | 1495 |
| 2X6X104 5/8" | 544 | 635 | 900 | 1395 |
| 2X4X12' | 465 | 595 | 740 | 1095 |
| 2X6X12' | 480 | 660 | 835 | 1160 |
| 2X4X16' | 530 | 665 | 870 | 1205 |
| 2X6X16' | 525 | 605 | 720 | 1125 |
| 4X8X7/16" ZIP | 448 | 542 | 825 | 1105 |
| 4X8X5/8" | 503 | 548 | 855 | 1055 |
| 4X8X3/4" T&G | 530 | 615 | 820 | 1140 |

14968281.v5

23.     On February 12, 2021, Rehkemper proposed a scheduled that would break product delivery into two phases, the first to be performed at the original agreement rate and the second to be pushed into the future at a rate to be negotiated by the parties.

24.     That same day, Mid-Rivers rejected Rehkemper's "two-phase" proposal, instead demanding Rehkemper "confirm the contract will be honored" without proposing a delivery schedule of its own.  *A true and accurate copy of Mid-Rivers' February 12, 2021 letter is attached hereto as Exhibit 2.*

25.     On February 19, 2021, Mid-Rivers wrote Rehkemper requesting it "provide us with your proposed delivery dates for the [Project]."

26.     On February 22, 2021, Rehkemper once again proposed the parties discuss a mutually agreeable delivery schedule that addressed the significant material cost increases attributable to Mid River's initial and ongoing project delay.  *A true and accurate copy of Rehkemper's February 22, 2021 letter is attached hereto as Exhibit 3.*

27.     Once again, Mid-Rivers flatly rejected Rehkemper's proposal.

28.     On February 25, 2021, having exhausted all proposed alternatives, Rehkemper submitted a "final proposal" to Mid-Rivers offering two delivery alternatives that would meet the Contingent Agreement's sole completion deadline.  *A true and accurate copy of Rehkemper's February 25, 2021 letter is attached hereto as Exhibit 4.*

29.     Pursuant to Rehkemper's alternative #1, Rehkemper offered to meet Mid-Rivers' expedited delivery scheduled in exchange for an equitable adjustment in price to reflect the drastic increase in lumber costs plus a $700,000 good faith discount to be applied by Rehkemper to Mid-Rivers' overall cost.

14968281.v5

30.     Pursuant to Rehkemper's alternative #2, Rehkemper offered to maintain the original price in exchange for delivery beginning on January 20, 2022 and completion by the March 25, 2022 completion deadline.

31.     Once again, Mid-Rivers rejected Rehkemper's final proposals outright.

32.     While Rehkemper subsequently met with Mid-Rivers to negotiate in person, the parties were ultimately unable to reach an agreement on a mutually agreeable delivery schedule.

33.     On March 12, 2021, the parties' negotiations having failed, Rehkemper declared the Contingent Agreement null and void.

## COUNT I

## DECLARATORY JUDGMENT

34.     Plaintiff incorporates, as if fully set forth herein, the allegations set forth in paragraphs 1 through 33 of this Complaint as if full set forth herein.

35.     A party interested in a written contract whose "rights, status or other legal relations" are affected by said contract "may have determined any question of construction or validity arising" under the contract. Mo. Rev. Stat. § 527.020.

36.     Section 527.020 is typically construed as follows:

[T]he court must be presented with: (1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation; (2) a plaintiff with a legally protectable interest at stake, ...; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law.

Missouri State Conf. of Nat'l Ass'n for Advancement of Colored People v. State, 601 S.W.3d 241, 246 (Mo. 2020) (citing Mo. Soybean Ass'n v. Mo. Clean Water Comm'n, 102 S.W.3d 10, 25 (Mo. 2003)).

37.     Specifically, when a party to a written contract seeks to determine the validity of the contract and its interests therein through a prayer for declaratory judgment, "[t]hose

7

14968281.v5

allegations state a cause of action for declaratory judgment." <u>Mercantile Trust Co. v. Chase Hotel, Inc.</u>, 510 S.W.2d 807 (Mo. Ct. App. 1974).

38.     Notably, pursuant to Missouri Supreme Court Rule 87.03, "[a] contract may be construed either before or after there has been a breach thereof." Mo. R. Civ. P. 87.03.

39.     A justiciable controversy is a "real, substantial, presently existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation." <u>Mo. Soybean Ass'n</u>, 102 S.W.3d at 26.

40.     It is clear from the facts as stated above that there exists a present controversy between the parties that is not merely hypothetical, but that is both real and substantial and in want of specific relief in that Rehkemper and Mid-Rivers have conflicting views of the enforceability of the Contingent Agreement.

41.     Furthermore, Rehkemper has a legally protectable interest as it is a party to the Contingent Agreement for which there is a dispute as to any future obligations.

42.     This controversy is also ripe because an agreement cannot be reached by the parties, resulting in Rehkemper alleging the Contingent Agreement is null, void, and of no legal effect while Mid-Rivers is claiming the Contingent Agreement somehow constitutes a valid and binding contract.

43.     Finally, Rehkemper has no adequate remedy at law to resolve this dispute as Mid-Rivers has refused to engage in meaningful negotiation with Rehkemper and claims that Rehkemper has breached the Contingent Agreement.

### The Contingent Agreement Is Void As It Is Missing An Essential Term

44.     Under Missouri law, a contract is comprised of the following essential elements: "'(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4)

8

14968281.v5

mutuality of agreement; and (5) mutuality of obligation.'" Olathe Millwork Co. v. Dulin, 189 S.W.3d 199, 203 (Mo. Ct. App. 2006) (citing Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co., 163 S.W.3d 472, 477 (Mo. Ct. App. 2005)).

45.     The fourth element, mutuality of agreement, requires the contracting parties have "'a mutuality of assent or a meeting of the minds to the essential terms.'" Id. (citing Ketcherside v. McLane, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003)).

46.     Determining what is an "essential element" depends on the agreement and its context, and also the subsequent conduct of the parties, including the dispute which arises and the remedy sought." Reitz v. Nationstar Mortg., LLC, 954 F. Supp. 2d 870, 887 (E.D. Mo. 2013) (citing Olson v. Curators of the University of Missouri, et al., 381 S.W.3d 406, 412 (Mo. Ct. App. 2012); Bryant v. Bryan Cave LLP, 400 S.W.3d 325, 341–42 (Mo. Ct. App. 2013)).

47.     Under Missouri law, courts do not have the power to infer missing essential terms. Bryant, 400 S.W.3d at 342.

48.     Under Missouri law, no contract should be found "where the essential terms of purported contract are reserved for future determination." Reitz, 954 F. Supp. 2d at 887; *accord* Gateway Exteriors, Inc. v. Suntide Homes, Inc., 882 S.W.2d 275, 279 (Mo. Ct. App. 1994)("If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement.")

49.     Product delivery schedule is an essential term to any construction contract, as without a project schedule the performing party's future contractual obligations are indefinite and uncertain.

14968281.v5

50.     A delivery schedule determines a plethora of key construction considerations for the performing party, including, but not limited to, the costs of the labor and materials being provided.

51.     In a multi-stage construction project, project schedules are an even more essential term, allowing the performing party to balance the needs of multiple concurrent construction jobs with their own pricing and supply requirements.

52.     The Contingent Agreement is for a multi-stage project wherein Rehkemper would provide all pre-panelized wood framing work for the Project before the Completion Date of March 25, 2022.

53.     The Contingent Agreement required Mid-Rivers and Rehkemper to attempt to negotiate a mutually agreeable delivery schedule that would meet the March 25, 2022 completion deadline.

54.     Mid-Rivers' exclusion of a proposed schedule (e.g. Exhibit D) from its initial proposal establishes that it was aware that the parties would reserve this essential contract term for future determination.

55.     Missouri law is clear that, where an essential term is reserved for future determination, there can be no valid contract. See Reitz v. Nationstar Mortg., LLC, 954 F. Supp. 2d 870, 887 (E.D. Mo. 2013).

56.     Because the Contingent Agreement lacks an essential term upon which the parties have been unable to agree, it is not an enforceable contract under Missouri law and is, therefore, null and void.

10

14968281.v5

**The Contingent Agreement Is Unenforceable Because A Condition Precent Is Unsatisfied**

57.     Under Missouri law, a *condition precedent* is "an act or event that must be performed or occur after the contract has been formed, before the contract becomes effective." MECO Systems, Inc. v. Dancing Bear Entertainment, Inc., 42 S.W.3d 794, 803 (Mo. Ct. App. 2001) (citing Morgan v. City of Rolla, 947 S.W.2d 837, 840 (Mo. Ct. App. 1997)).

58.     Importantly, a condition precedent "must be fulfilled before the duty to perform an existing contract arises." CitiMortgage, Inc. v. Equity Bank, N.A., 261 F.Supp.3d 942, 952 (E.D. Mo. 2017) (citing Lowery v. Air Support Intern, Inc., 982 S.W.2d 326, 329 (Mo. Ct. App. 1998)).

59.     Although conditions precedent are disfavored, their existence in a contract can be proven through either plain, unambiguous language or necessary implication. Id. (citing James A. Brady & Co. v. Eno, 992 F.2d 964, 869 (8th Cir. 1993)).

60.     If a contracting party has a duty to make the condition precedent occur, non-occurrence of that condition breaches said duty. Lowery, 982 S.W.2d at 329 (citing Highland Inns Corp. v. American Landmark Corp., 650 S.W.2d 667, 672 (Mo. Ct. App. 1997)).

61.     To the extent this Court were to find the Contingent Agreement otherwise enforceable, a condition precedent (e.g., mutually agreeable delivery schedule) has not been satisfied and therefore the Contingent Agreement is not effective or enforceable against Rehkemper.

WHEREFORE, Rehkemper & Sons, Inc., respectfully requests this Court enter an Order granting Rehkemper declaratory relief, reading and interpreting the Contingent Agreement, declaring the Contingent Agreement as lacking an essential term and/or unfulfilled condition precedent and therefore deeming the Contingent Agreement unenforceable, null and void,

14968281.v5

declaring that Rehkemper owes no contractual duty to Mid-Rivers Development and Construction LLC based on the null Contingent Agreement, and granting such other and further relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

SANDBERG PHOENIX & von GONTARD P.C.


By:   /s/*M. Quinn Murphy*
M. Quinn Murphy, #53821MO
Meredith M. Pitts, #69795MO
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
qmurphy@sandbergphoenix.com
mpitts@sandbergphoenix.com

*Attorneys for Plaintiff*
*Rehkemper & Sons, Inc.*

14968281.v5