UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REHKEMPER & SONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:21-CV-00380-SEP |
| MID-RIVERS DEVELOPMENT AND CONSTRUCTION LLC, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Before the Court is Mid-Rivers Development and Construction LLC's Motion to Dismiss the Complaint. Doc. 4. For the reasons set forth below, the Motion is denied.

### FACTS AND BACKGROUND[1]

Plaintiff Rehkemper & Sons, Inc., is a subcontractor that specializes in providing construction developers with roof and floor trusses, factory-fabricated stud walls, loose wood products, and connection hardware. Doc. 1 ¶¶ 1, 2. Defendant Mid-Rivers Development and Construction LLC is a construction developer that, at the time of the Complaint, was in the process of developing an apartment complex known as The Reserve at Mid-Rivers (The Reserve). Doc. 4 at 1.

In March 2020, Rehkemper and Mid-Rivers began discussing a deal where Rehkemper would provide Mid-Rivers with certain wood carpentry components and materials for use at The Reserve complex. Doc. 1 ¶ 9. In response to a proposal from Rehkemper, Mid-Rivers sent back a "Non-Binding Letter of Intent and Authorization to Proceed." *Id.* ¶ 11. Mid-Rivers initially represented that work at The Reserve would begin in March but then postponed negotiations with Rehkemper for six months. *Id.* ¶ 12.

In September 2020, Mid-Rivers re-initiated discussions with Rehkemper and proposed that the parties enter an agreement to complete all "pre-panelized wood framing work" based on Rehkemper's original proposal. *Id.* ¶ 13. The Mid-Rivers proposal, which

---

[1] For the purpose of this Motion, the Court assumes that the factual allegations in the Complaint are true. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

was based on Rehkemper's earlier proposal, referenced a delivery schedule but did not attach one. *Id.* ¶ 14. Rehkemper, already concerned about the ongoing delay and with growing apprehension over the sudden rise in lumber prices, revised portions of the Mid-Rivers proposal to provide that any agreement be contingent on a "mutually agreeable delivery schedule." *Id.* ¶¶ 15, 16. Mid-Rivers approved the revised proposal (the Contingent Agreement) and specifically initialed three separate provisions indicating that the agreement was contingent on a "mutually agreeable schedule." *Id.* ¶ 17; Pl. Ex. 1 at 2, 5. According to Rehkemper, however, Mid-Rivers intentionally omitted an attachment that normally included the delivery schedule, with specific commencement and completion dates, because they were still not ready to proceed with the project. *Id.* ¶¶ 17, 18. There was only one deadline set forth in the Contingent Agreement: "Rehkemper's 'work is to be completed no later than March 25, 2022 (the Completion Date)." *Id.* ¶ 20; Pl. Ex. 1.

Once the Contingent Agreement was made in September 2020, the parties began negotiating the delivery schedule. *Id.* ¶ 21. Negotiations apparently continued for months, until Mid-Rivers "emerged and demanded immediate delivery" in February 2021. *Id.* ¶ 22. Between March 2020 and February 2021, lumber prices had risen between 200% and nearly 300%. *Id.* On February 12, 2021, Rehkemper submitted a proposed delivery schedule that accounted for the change in lumber prices. *Id.* ¶ 23. Mid-Rivers rejected the proposal and demanded that Rehkemper "confirm the contract will be honored." *Id.* ¶ 24; Pl. Ex. 2. A week later, Mid-Rivers requested that Rehkemper provide proposed delivery dates. *Id.* ¶ 25. Rehkemper responded by proposing that the parties discuss a mutually agreeable delivery schedule that would account for the increase in lumber prices and ongoing project delay. *Id.* ¶ 26. Mid-Rivers again rebuffed Rehkemper's suggestion. *Id.* ¶ 27.

On February 25, 2021, Rehkemper submitted a "final proposal" to Mid-Rivers that offered two delivery alternatives, both of which would meet the original agreement's final completion deadline of March 25, 2022. *Id.* ¶ 28. The first option offered to meet Mid-Rivers' expedited delivery schedule in exchange for an adjustment reflecting the increased lumber prices, "plus a $700,000 good faith discount to be applied by Rehkemper to Mid-Rivers' overall cost." *Id.* ¶ 29. The second option offered to maintain the original price in exchange for delivery beginning January 20, 2022, and completion by the March 25, 2022, deadline. *Id.* ¶ 30. Mid-Rivers rejected both options. *Id.* ¶ 31.

The parties made a last-ditch effort to negotiate in person but were unable to reach a mutually agreeable delivery schedule. *Id.* ¶ 32. On March 12, 2021, negotiations having failed, Rehkemper declared the Contingent Agreement null and void. *Id.* ¶ 33.

Rehkemper then brought this state law claim for declaratory judgment under Mo. Rev. Stat. § 527.020. Rehkemper believes that the product delivery schedule was an essential term of the Contingent Agreement, and because it was reserved for future determination and never agreed to, there was no valid contract. *Id.* ¶¶ 55-56. Alternatively, Rehkemper argues that the mutually agreeable delivery schedule term established a condition precedent that was not met, rendering the agreement unenforceable. *Id.* ¶¶ 57-61. As relief, Rehkemper requests that the Court declare that the Contingent Agreement lacked an essential term or, alternatively, contained an unfulfilled condition precedent, and hold that the agreement is unenforceable.

Mid-Rivers now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. Doc. 4 at 1. For the reasons that follow, the Motion is denied.

### LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, a court assumes the factual allegations of a complaint are true and draws all reasonable inferences in the non-movant's favor. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

#### DISCUSSION

Although not briefed by the parties, this case poses the question of whether and how a federal court may adjudicate a cause of action brought under a state declaratory judgment statute. The Court has diversity jurisdiction over Rehkemper's state law claim under 28 U.S.C. § 1332. "[A] federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State . . . ." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945). "As such, the Court is bound to apply state substantive law." *Nat. R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F. Supp. 424, 429 n.7 (D.D.C. 1987) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "However, the Declaratory Judgment Act is procedural." *Id.* (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937)). "As such, federal law determines whether a federal court may properly render a declaratory judgment." *Id.*; *see also Fidelity Nat. Title Ins. Co. v. Captiva Lake Invs., LLC*, 788 F. Supp. 2d 970, 973 (E.D. Mo. 2011) ("[A] claim for declaratory relief in a diversity action presents a procedural matter . . . . Thus, the federal Declaratory Judgment Act . . . governs whether the Court may grant the relief [claimant] seeks . . .") (citing *Nat. R.R. Passenger Corp.*, 670 F. Supp. at 429 n.7).

The federal Declaratory Judgment Act, pursuant to Article III of the Constitution, authorizes federal courts to declare the rights of interested parties only "[i]n a case of actual controversy." *See* 28 U.S.C. § 2201; *Fredman Bros. Furniture Co. Inc. v. Sleep Level LLC*, 2009 WL 2391952, at *2 (E.D. Mo. Aug. 3, 2009). "In general, an actual controversy is 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1942)). For the same reasons described below, the Court concludes that a substantial and immediate controversy exists between the parties. Therefore, the federal Declaratory Judgment Act poses no bar to declaratory relief in this matter if such relief is justified under Missouri substantive law.

Under Missouri Revised Statute § 527.020, "any person interested under a . . . written contract or other writings constituting a contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." "[T]o maintain a declaratory judgment action,

there must be no adequate remedy at law." *City of Woodson Terrace*, 378 S.W.3d at 361 (citing *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. 2003)).

To state a plausible claim for a declaratory judgment under Missouri law, a plaintiff must present:

(1) a justiciable controversy that presents a real, substantial, presently-existing controversy admitting of specific relief, as distinguished from an advisory decree upon a purely hypothetical situation;

(2) a plaintiff with a legally protectable interest at stake, "consisting of a pecuniary or personal interest directly at issue and subject to immediate or prospective consequential relief;"

(3) a controversy ripe for judicial determination; and

(4) an inadequate remedy at law.

*Missouri Soybean Ass'n v. Missouri Clean Water Comm'n*, 102 S.W.3d 10, 25 (Mo. 2003) (quoting *Northgate Apartments, L.P. v. City of North Kansas City*, 45 S.W.3d 475, 479 (Mo. App. 2001)). "A declaratory judgment should have a 'conclusive effect and should lay to rest the parties' controversy.'" *Id.* (quoting *Jones v. Carnahan*, 965 S.W.2d 209, 214 (Mo. App. 1998)). Unlike the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which acts as a remedy and not a claim, Missouri law provides for a stand-alone declaratory judgment action. *See Eco-Site, LLC v. City of University City, Mo.*, 2018 WL 5761765, at *6 (E.D. Mo. Nov. 2, 2018).

In its Motion, Mid-Rivers argues that the Complaint should be dismissed because the "mutually agreeable delivery schedule" term should have been construed under the Uniform Commercial Code as providing for a "'reasonable time.'" Doc. 4 at 4 (quoting Mo. Rev. Stat. § 400.2-309(1)). Mid-Rivers further argues that Rehkemper "knew or should have had a good idea as to its schedule of delivery" based on (a) usage of trade in the construction industry, (b) the "critical path method" of scheduling that is used for complex construction projects, and (c) the known completion deadline and production schedule. Doc. 4 ¶ 26.

Mid-Rivers's argument places the cart before the horse. At this stage, Rehkemper is required only to plead a valid declaratory judgment action under § 527.020. It is not required to show that it is entitled to the declaration sought. *See Mo. St. Conf. of NAACP, et al. v. State of Missouri*, 601 S.W.3d 241, 246 (Mo. 2020) ("Absent from [the *Mo. Soybean Ass'n*] elements is any suggestion that the party seeking a declaratory judgment fails to state a claim

5

upon which relief can be granted if that party will not—on the merits—be entitled to the declaration sought."). "Whether the contract is invalid . . . and whether [Rehkemper] has any liability under it is the very question posed by the request for declaratory judgment." *Mercantile Trust Co. v. Chase Hotel, Inc.*, 510 S.W.2d 807, 809 (Mo. App. 1974) (cleaned up). As long as Rehkemper alleges "a written contract, their interest therein, a dispute as to its validity, construction, and effect and have prayed for a declaration of their rights thereunder . . . [t]hose allegations state a cause of action for declaratory judgment." *Id.*; *see also Mo. St. Conf. of NAACP*, 601 S.W.3d at 246.

The Complaint properly pleads the elements of a declaratory judgment action under § 527.020. First, the allegations in the Complaint clearly present a presently-existing controversy between Rehkemper and Mid-Rivers. The two undeniably disagree as to whether the delivery schedule term was essential to the contract. Second, Rehkemper has adequately pled the existence of a legally protected interest at stake. Rehkemper has a pecuniary interest in the determination of the terms contained in the Contingent Agreement. Third, the allegations in the Complaint show that the controversy is ripe for adjudication, inasmuch as there is an actual immediate controversy that is amenable to judicial resolution. *See Mo. Soybean Ass'n*, 102 S.W.3d at 26. Fourth, the Complaint pleads that, given Mid-Rivers's continued refusal to negotiate, Rehkemper has no adequate remedy at law—a claim that Mid-Rivers does not refute.

## CONCLUSION

For the foregoing reasons, the Complaint properly pleads a declaratory judgment action under Mo. Rev. Stat. § 527.020. Mid-Rivers's Motion must therefore be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Mid-Rivers's Motion to Dismiss, Doc. [4], is **DENIED.**

Dated this 23rd day of December, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE