UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REHKEMPER & SONS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:21-cv-00380-SEP |
| MID-RIVERS DEVELOPMENT AND CONSTRUCTION, LLC, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Before the Court is the Joint Motion for Summary Judgment filed by Plaintiff Rehkemper & Sons, Inc., and Crossclaim Defendant James Datema. *See* Doc. [47]. The motion is fully briefed and ripe for review. For the reasons set forth below, the Court grants the motion in part and denies it in part.

### FACTS AND BACKGROUND[1]

Rehkemper & Sons, Inc., a subcontractor, and its corporate representative, James Datema, bring this action for a declaratory judgment against Defendant Mid-Rivers Development and Construction, LLC. *See* Doc. [1]. Mid-Rivers is a construction developer that, at the time this action was brought, was developing an apartment complex in Missouri known as The Reserve at Mid-Rivers (the Project). Doc. [49-3] at 1.

Around March 2020, Rehkemper sent Mid-Rivers a "Non-Binding Letter of Intent" confirming its interest in providing materials for the Project. Doc. [52] ¶ 4. Before entering into the agreement at issue in this case, Rehkemper and Mid-Rivers had discussed Rehkemper's practice of purchasing lumber futures and "railroad cars full of lumber to be able to lock in pricing in the event of a price swing in the market." Doc. [58] ¶¶ 71, 66.

On September 21, 2020, Rehkemper and Mid-Rivers signed an agreement, under which Rehkemper agreed to provide $5,647,507.00 worth of lumber and associated materials to Mid-Rivers for the Project (the Agreement). Doc. [52] ¶ 5; Doc. [49-3] at 1. The Agreement provides only that Rehkemper would supply those materials and does not mention installation or

---

[1] The facts are drawn from Plaintiff's Statement of Uncontroverted Material Facts, Doc. [49], Defendant's response, Doc. [52], and Plaintiff's further response to Defendant, Doc. [58].

construction services.  Doc. [52] ¶ 6.  The Agreement contains Rehkemper's proposed revisions prior to execution and Mid-Rivers's consent to those revisions.  *Id.* ¶ 8.

The Agreement includes the following provisions:

> WORK COORDINATION AND COOPERATION:  The Subcontractor agrees to cooperate to the fullest extent with Contractor and to coordinate and perform the Work in accordance with the Contractor's job schedules *as mutually agreed with Subcontractor* in such order and priority as Contractor considers necessary to avoid delay or hindrance of the construction of the project as a whole. . . .
>
> The Subcontractor shall complete the Work *as required by the job schedule and prepared by the Contractor which may be amended from time to time* without affecting Subcontractor's obligation as set forth in this contract. . . .
>
> TERMINATION: . . . If Subcontractor delays, hinders, or fail [sic] or refuses at any time to proceed *in strict accordance with the mutually agreeable job schedule*, as determined by the Contractor and Subcontractor . . . then any such event will be deemed a material breach of this Subcontract.

Doc. [49-3] at 2, 5 (emphasis added); *see also* Doc. [52] ¶ 7.

The Agreement defines the contract documents to include both the Agreement itself and any attached exhibits.  Doc. [52] ¶ 9.  Though the Agreement references a job schedule attached as "Exhibit D," Doc. [49-3] at 7, it contains no such exhibit.  Doc. [52] ¶ 10.  The Agreement includes the following provisions relating to timing:  "The Subcontractor agrees to begin work upon receipt of all wall rough opening sizes from Contractor," and "The Subcontractor's work is to be completed no later than MARCH 25, 2022 ('Completion Date')."[2]  Doc. [49-3] at 2; Doc. [58] ¶¶ 48-49.

---

[2] While the parties agree that March 25, 2022, is the completion date stated in the Agreement, they dispute whether the Agreement includes a commencement date.  According to Mid-Rivers, Rehkemper's performance under the Agreement "was to commence upon receipt of the wall rough opening sizes, and Plaintiff received those by virtue of acting as the supplier of Windows and Doors on the Project," Doc. [58] ¶ 53.  Rehkemper responds that the Agreement obligated it only "to provide lumber materials to Mid Rivers upon receipt of rough wall opening sizes *if the parties were able to achieve a mutually agreed delivery schedule.*"  *Id.* (emphasis added).

Under the heading "Showing Up and Scheduling Work," the Agreement states:  "The Subcontractor agrees to begin work on or before," after which there is a blank, into which the parties inserted the typed text, "upon receipt of all wall rough opening sizes from Contractor."  Doc. [49-3] at 2.  After the blank, the text continues, "and shall carry on said work promptly, efficiently, and at a speed that will not cause delay in the progress of Work."  *Id.*  That particular blank is marked "(3)" by hand, and the bottom of the page bears the written annotation, "Edits (1) through (5) Agreed," which is initialed by two parties and dated.  *Id.*  Based on the clear text of edit (3), which the parties to the Agreement both specifically

2

On January 6, 2021, Brandon Kohler, a representative for Mid-Rivers, emailed James Datema what he identified as a "[n]ew construction schedule," before continuing, "of course this is all very tentative and we want to make up some time in there somehow but this should work." Doc. [49-6] at 1.  After several rounds of communication between the parties about the job schedule and the terms of their agreement, Rehkemper filed this lawsuit on March 31, 2021, requesting that the Court declare the Agreement "null and void."  Doc. [1] ¶¶ 56, 61; Doc. [58] ¶ 34.  In response, Mid-Rivers brought four counterclaims against Rehkemper:  breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), promissory estoppel (Count III), and fraudulent inducement (Count IV).  *See* Doc. [23].

While the parties agree on the above facts, they vigorously dispute whether they ever agreed to a delivery schedule.  Rehkemper asserts that the Agreement was "contingent on a 'mutually agreeable job schedule,'" because the parties had agreed to negotiate a job schedule and left that term to be determined in the future.  Doc. [48] at 3; Doc. [49] ¶ 12.  Rehkemper further claims that it "never agreed to any aspect of [Defendant's] January 6, 2021 tentative construction schedule."  Doc. [49] ¶ 17.  According to Rehkemper, Mid-Rivers "never proposed a single delivery schedule to [Plaintiff]," and the parties "never reached an agreement as to a mutually agreeable delivery schedule."  *Id.* ¶¶ 29-30.  As a result, Rehkemper claims to have declared the Agreement "null and void" because the parties did not reach an agreement to satisfy the contractual contingency of a "mutually agreeable job schedule."  *Id.* ¶¶ 29-31.

According to Mid-Rivers, on the other hand, the parties "did come to a mutually agreeable schedule right around the time the rough opening sizes were provided."  Doc. [52] ¶ 14.  Mid-Rivers notes that the parties "subsequently entered into a second agreement on November 10, 2020 to provide all the windows and doors ('Windows and Doors Contract') on the Project[.]"  *Id.* ¶ 42.  And the Windows and Doors Contract "set forth the delivery schedule (start date and end date) of each building."  *Id.* ¶ 43.  Mid-Rivers maintains that "[t]he schedule attached as Exhibit D to the Windows and Doors Contract was to be used as the agreed upon schedule for the Windows and Doors Contract as well as the . . . Agreement."  *Id.* ¶ 44.  Mid-

---

endorsed, the Court finds that the Agreement required Rehkemper to commence performance "upon receipt of all wall rough opening sizes."  *Id.*; *see also Bailey v. Federated Mut. Ins. Co.*, 152 S.W.3d 355, 357 (Mo. Ct. App. 2004) (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973)) ("When a contract's language is clear, we discern the parties' intent from the document alone.").

3

Rivers asserts that Rehkemper tried to "renegotiate" the Agreement by modifying that delivery schedule, and later "manifested its intentions not to perform under the . . . Agreement[.]" *Id.* ¶¶ 47, 73. After ensuring that Rehkemper did not intend to perform, Mid-Rivers claims to have "moved hastily to secure a new provider of the shell on the Project." *Id.* ¶ 73.

Rehkemper filed its Motion for Summary Judgment, Doc. [47], on June 9, 2022. Rehkemper argues that the Agreement cannot be enforced against it either because the parties did not agree upon a job schedule, which is an essential term for contract formation, or because the job schedule was a condition precedent to Rehkemper's contractual obligations, and that condition was never satisfied. *Id.* at 7-9. Rehkemper also seeks summary judgment on Mid-Rivers's counterclaims.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Binkley v. Entergy Operations, Inc.*, 602 F.3d 928, 931 (8th Cir. 2010) (quotation marks omitted) (quoting *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002)).

**DISCUSSION**

I.  **Rehkemper fails to show that a contract was never created.**

Rehkemper asserts that it is not bound to perform under the Agreement because that document did not contain a mutually agreeable job schedule, which was an essential term for contract formation. Because the parties left the job schedule for future negotiation, Rehkemper argues, "mutuality of assent did not occur," and no enforceable contract exists as a matter of law. Doc. [48] at 6, 7. That argument fails.

"The essential elements of an enforceable contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement and obligation." *Computer Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 675 (Mo. Ct. App. 1988) (citing *Bengimina v. Allen*, 375 S.W.2d 199, 202 (Mo. Ct. App. 1964)). Under the Uniform Commercial Code (UCC),[3] "[e]ven though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." Mo. Rev. Stat. § 400.2-204(3). "The fact that one or more terms are left to be agreed upon [does not] itself . . . defeat an otherwise adequate agreement." Mo. Rev. Stat. § 400.2-204 cmt.

The Agreement at issue in this case includes a commencement provision, a completion date, price, a quantity, a time-is-of-the-essence provision, and both parties' signatures. *See* Doc. [49-3]; *see also supra* note 2. Rehkemper points to no authority holding that an agreement containing such terms fails to satisfy the "mutuality of agreement" element of an enforceable contract under Missouri law. *See* Doc. [48] at 5-7 (citing *Olathe v. Millwork Co. v. Dulin*, 189 S.W.3d 199 (Mo. Ct. App. 2006) (finding that the lack of a definite price and specification of work—neither of which is missing here—prevented contract formation); *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. Ct. App. 2008) (parties failed to reach an agreement to arbitrate their dispute because they did not mutually agree on the

---

[3] The UCC applies because the Agreement concerns the sale of lumber and associated materials. *See* Doc. [52] ¶ 6. Such materials qualify as "things . . . which are movable at the time of identification to the contract for sale," and therefore may be considered "goods." Mo. Rev. Stat. § 400.2-105(1). Rehkemper does not dispute the applicability of the UCC to the Agreement. *See generally* Doc. [54]. Because the Agreement represents a "transaction[] in goods," the Court applies Article 2 of the UCC to determine whether the Agreement constitutes a binding contract. Mo. Rev. Stat. § 400.2-102 (Article 2 of the UCC "applies to transactions in goods").

arbitration terms and also reserved one of those terms for future determination); *GOAD Co. v. Honeywell Int'l, Inc.*, 2015 WL 4727424, at *3 (W.D. Mo. July 30, 2015) (letter to subcontractor that contractor would use subcontractor subject to being awarded contract and subcontractor submitting "fair and reasonable price" provided no mutuality of assent and was not enforceable); *Gateway Exteriors, v. Suntide Homes*, 882 S.W.2d 275, 279 (Mo. Ct. App. 1994) (no contract to provide and install siding existed where "the number of homes to be sided was not only unknown, but also defendant had not agreed that plaintiff would be the subcontractor on any particular home or on all homes to receive vinyl siding[.]" )).

On the other hand, Missouri case law does contain cases in which more significant omissions than a delivery schedule did *not* invalidate a contract. *See, e.g.*, *Computer Network, Ltd.*, 747 S.W.2d at 677 (letter signed by both parties detailing the sale of computers and listing quantity contained "all the material and essential terms for a binding agreement"); *Allied Disposal, Inc. v. Bob's Home Serv., Inc.*, 595 S.W.2d 417, 421 (Mo. Ct. App. 1980) ("[A]greement to agree" on price term "does not preclude, in and of itself, the validity of a contract.").

Rehkemper also fails to cite any authority finding an agreement like the one in this case "indefinite" under the UCC. None of the cases cited even applies the UCC. *See* Doc. [48] at 5-7. Thus, even assuming that the parties "agreed to agree" on the delivery schedule, Rehkemper has not shown that deferring agreement on that particular term prevented a contract from being formed.

Because Rehkemper has not shown that the Agreement lacks any essential element under Missouri law or is indefinite under the UCC, the Court cannot find that the Agreement did not create a valid contract between the parties as a matter of law.

**II.     Rehkemper fails to show an absence of genuine dispute of material fact as to whether Mid-Rivers satisfied a condition precedent.**

Alternatively, Rehkemper argues that the Agreement is unenforceable because mutual agreement on the job schedule was a condition precedent to performance, and that condition precedent was never satisfied. Doc. [48] at 7-9. According to Rehkemper, "there is no dispute that Rehkemper was never presented with, nor agreed to, any job schedule." *Id.* at 9. That argument also fails.

Assuming Rehkemper is correct that mutual agreement on a job schedule was a condition precedent to its responsibilities under the Agreement, whether Mid-Rivers satisfied that condition is subject to genuine dispute. Rehkemper insists, providing some evidence, that "Rehkemper was never presented with, nor agreed to, any job schedule." *Id.* at 9; *see also* Doc. [49] ¶ 30 ("Mid Rivers and Rehkemper never reached an agreement as to a mutually agreeable delivery schedule.").[4] Mid-Rivers counters, and provides other evidence, that the parties "did come to a mutually agreeable schedule" by virtue of the Window and Doors Contract they entered into after the Agreement. Doc. [52] ¶ 14. "The schedule attached . . . to the Windows and Doors Contract," Mid-Rivers maintains, "was to be used as the agreed upon schedule for the Windows and Doors Contract as well as the . . . Agreement."[5] *Id.* ¶ 44.

Because a genuine dispute exists as to whether Mid-Rivers satisfied the putative condition precedent, Rehkemper is not entitled to judgment as a matter of law that Mid-Rivers's failure to fulfill a condition precedent excused it from its remaining obligations under the Agreement. *See Celotex Corp.*, 477 U.S. at 322.

### III. Summary judgment is denied as to Counterclaims I, II, and IV and granted as to Counterclaim III.

#### A. Counterclaims I, II, and IV survive because the Court does not find that no contract existed.

Rehkemper argues that it is entitled to summary judgment on Mid-Rivers's counterclaims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II) because Mid-Rivers "cannot establish an enforceable contract giving rise to legal obligations." Doc. [48] at 9. Rehkemper's argument for summary judgment as to Mid-Rivers's fourth counterclaim likewise depends on its argument that there was no valid contract.

---

[4] Rehkemper points to the depositions of two of its employees. *See* Doc. [49-12] at 80:4,8-9 (Deposition of James Datema) ("We never had a schedule . . . [N]o one ever provided us a schedule.); *see also* Doc. [49-1] at 63:10-14 (Q: My question is: Did they ever tell you that with regard to [the Agreement], we agree to these schedules set forth in this Exhibit D . . . ? A: No, they didn't.").

[5] Mid-Rivers cites the deposition of Brandon Kohler and the Windows and Doors Contract to advance its argument that the parties did in fact arrive at a mutually agreeable job schedule via the Windows and Doors Contract. *See* Doc. [52-4] 36:25; 37:1-10 ("Q. . . . What did you understand the mutually agreeable language to mean with regard to the job schedule at the time you were evaluating it? A. Well, I understood it to mean that since they were not—we would not give us a start date until they had agreed upon the rough openings for the doors, that we would come to a mutually agreeable schedule once we had the rough openings for the doors, then they could begin production of the panels."); *see also* Doc. [52-5] (Windows and Doors Contract).

Specifically, Rehkemper argues that it is "entitled to judgment as a matter of law on Count IV of Mid Rivers' Counterclaim for fraud"[6] because Mid-Rivers "cannot establish its *reasonable* reliance" or "justifiable reliance" on Rehkemper's representations about buying lumber futures and trainloads of lumber, as "the parties never reached an agreement that would satisfy the contractual contingency. . . ." Doc. [48] at 12-14.

Because Rehkemper has not shown that there was no valid contract between the parties as a matter of law, *see supra* Part I, Rehkemper's arguments for summary judgment on Counterclaims I, II, and IV fail.

**B. Mid-Rivers has not opposed summary judgment on Counterclaim III.**

Rehkemper contends that Mid-Rivers's "promissory estoppel cause of action fails as a matter of law because Mid Rivers is not seeking equitable relief and cannot establish its reasonable reliance upon an actionable promise by Rehkemper." Doc. [48] at 10. Because Mid-Rivers neglected to respond to that argument for summary judgment, Rehkemper argues that "Mid Rivers has legally abandoned its Count III claim for promissory estoppel." Doc. [54] at 5.

Under Counterclaim III, Mid-Rivers asks the Court for "actual damages, for interest at the maximum statutory rate from the date of judgment, for any other lawful charges that accrue [until] the date of judgment, for costs and attorney's fees . . . and for such other and further relief as this Court deems just and proper." Doc. [23] at 10. Mid-Rivers seeks only money damages and does not request specific performance. *See Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo. Ct. App. 2010) (affirming dismissal of promissory estoppel claim because

---

[6] Rehkemper's argument for summary judgment describes Mid-Rivers's fourth counterclaim, which is for fraudulent inducement, Doc. [23] ¶¶ 46-62, as "[a] claim for fraudulent or negligent misrepresentation," Doc. [48] at 13. Going forward, the parties should bear in mind that fraudulent inducement and fraudulent misrepresentation, while similar, are not the same. *Compare Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 536 (Mo. 2002) (quoting *John T. Brown, Inc. v. Weber Implement & Auto. Co.*, 260 S.W.2d 751, 755 (Mo. 1953)) (stating the elements of fraudulent misrepresentation) ("It [is] essential . . . to establish a representation; its falsity; its materiality; the speaker's knowledge of its falsity; his intent that it be acted on by the hearer and in the manner reasonably contemplated; the hearer's ignorance of its falsity; his reliance on its truth; his right to rely thereon; and his consequent and proximate injury."), *with Trotter's Corp. v. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 939 (Mo. Ct. App. 1996) (stating the elements of fraudulent inducement) ("To prevail at trial, the defendants would have to prove each of the following: (1) that agents of Trotter's made certain material representations to defendants, (2) such representations were false when made, (3) the agents making the representations knew they were false, (4) the representations were made with the purpose of deceiving defendants, (5) defendants were, in fact, deceived, (6) defendants reasonably relied on the representations in signing the franchise agreement and assignment, and (7) defendants suffered damage as a proximate result of the fraudulent misrepresentations.").

"Birkenmeier was not seeking specific enforcement of the promise, and was instead seeking a remedy at law").

Because Mid-Rivers failed to oppose Rehkemper's argument, the Court grants summary judgment for Rehkemper on Counterclaim III. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."); *see also Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1141 (8th Cir. 2014) (collecting cases).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [47], is **GRANTED IN PART** and **DENIED IN PART** as described in this Order.

Dated this 31st day of January, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

9